**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| AZANIA MUWWAKKIL<br>2405 Buckeye Circle<br>Blue Bell, PA 19422 | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. _____ |
| | : | |
| PRITCHARD INDUSTRIES, LLC | : | |
| 150 E. 42nd Street, 7th Floor | : | |
| New York, NY 10017 | : | **JURY TRIAL DEMANDED** |
| | : | |
| Defendant. | : | |
| | : | |

## CIVIL ACTION COMPLAINT

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Azania Muwwakkil (*hereinafter* referred to as "Plaintiff," unless indicated otherwise) against Pritchard Industries, LLC ("Defendant"). Plaintiff asserts violations of Section 1981 of the Civil Rights Act of 1866 ("Section 1981" - 42 U.S.C. § 1981) for discrimination in terms and conditions of her employment and for disparate pay premised upon race and/or ethnicity. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal laws.

3. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over

Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4.      Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this District because actions underlying this case occurred in this District, and Defendant is deemed to reside where it is subject to personal jurisdiction (rendering venue appropriate for multiple reasons).

## PARTIES

5.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6.      Plaintiff is an adult female residing at the above-captioned address.

7.      Defendant is a nationwide commercial cleaning and facility services company incorporated in the State of Delaware and headquartered in New York at the above-captioned address.

8.      At all times relevant herein, Defendant acted by and through its agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

9.      The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10.     Plaintiff is a black (African-American) female.

11.     Plaintiff was effectively hired by Defendant on or about July 8, 2019; and in total, Plaintiff has worked for Defendant for approximately seven (7) years.

2

12.    Defendant employs more than 10,000 employees, operates through physical offices in many states, and contracts with third-party businesses all over the United States to provide commercial cleaning, facility maintenance and engineering services.

13.    Plaintiff worked from and had been based within Defendant's location at 7025 West Chester Pike, Upper Darby, PA 19082 (within Montgomery County). But in mid-2025, Plaintiff's location changed to 1 Bala Avenue, Suite 502, Bala Cynwyd, PA 19004.

14.    During Plaintiff's first several years of employment, she *was referred to* as a Human Resources Claims Specialist. But she was really part of Defendant's claims and insurance staff.

15.    Throughout her employment, Plaintiff was typically the only black (female) employee within her location performing her type of role and worked primarily under an all-non-black management hierarchy.

16.    In 2022, Plaintiff was being treated disparately with respect to how she was communicated with by her management, not being included in certain meetings, and her management was very aggressive and intimidating towards her unlike her non-black peers.

17.    In late 2022, Plaintiff therefore lodged concerns of racial disparities and racially discriminatory treatment. In particular, Plaintiff had verbally complained of racially discriminatory treatment to Laketa Byrd ("Byrd"), the Human Resources Manager at the time (and she followed up with documented examples of mistreatment). Plaintiff had complained about such treatment under the management of Bozena Brzezinska ("Brzezinska" – Director of Risk Management), who is Caucasian.

18.    Although labeled a Human Resources Claims Specialist, Plaintiff processed worker's compensation claims, general liability claims, auto claims, and property claims (among

3

other related duties). Despite her (misleading) job title, *she had not* performed work as a traditional human resources employee.

19.     As of late 2022, there was substantial discussion with Plaintiff (from her management) about both adjusting her title and treating her as promoted to a Risk and Insurance position. This is embodied in numerous emails and meeting requests in said timeframe.

20.     Presumably though as a result of Plaintiff's racial discrimination complaints, she was not in fact adjusted in her role or promoted in 2022 or 2023.

21.     Instead, by in or about January of 2023, Defendant had hired Sydney Howard ("Howard"), a Caucasian female. Howard (who became a Risk Claims Representative) was less experienced and less qualified than Plaintiff, but hired for the role previously discussed with Plaintiff, nonetheless.

22.     Before working for Defendant, Plaintiff had worked at Independence Blue Cross, United Health Group, and American Independent Insurance Company. Prior to working for Defendant, Plaintiff had nearly a decade of combined insurance, claim processing, fraud investigation, and claim negotiation or administration experience.

23.     Despite all of her experience, extensive work for Defendant, and exemplary performance - - Plaintiff had **only been paid** a continual salary of no more than $65,000.00. As will be explained *infra*, others were continually paid (much) more favorably than Plaintiff (as they were not black). It was not until April 29, 2026, that Defendant finally adjusted Plaintiff's pay to $90,000.00 without properly giving her years of retroactive pay and without still paying her equivalent to non-black colleagues.

24.     To provide one (1) of many examples, Anthony Guacho ("Guacho"), a Hispanic (non-black) male, was hired within Plaintiff's work location (in late 2024). He came to the US

4

with minimal experience and was hired for his first US job with Defendant as an Administrative Assistant, and within roughly five (5) months (as of March 2025, referenced more below), was elevated and paid <u>the same</u> salary as Plaintiff (and the same salary Plaintiff was paid *for nearly 6 years* prior as well).

25. In late 2024, Chris Nowak ("Nowak"), a Caucasian male, had become Defendant's Senior Vice President of Human Resources and General Counsel. Risk, Human Resources, and legal personnel were thereafter supervised by Nowak.

26. Plaintiff had raised additional concerns of racial disparities in the second half of 2024, explaining she has not received raises, elevation(s), and didn't believe treatment or compensation was racially equal within the workplace. Plaintiff's concerns remained unaddressed.

27. On or about January 27, 2025, Plaintiff was informed because she was already performing work that was similar to a Risk Claim Specialist, her job title was merely being changed to that title from HR Claim Specialist. Plaintiff was further informed: (a) she was not being treated as promoted; and (b) she was being given <u>no additional</u> financial compensation. Instead, Plaintiff *was to remain no more than $65,000.00 per annum salary* (the same as she had been paid for nearly the prior six (6) years).

28. Following Plaintiff's title change notification, on January 27, 2025, an email was disseminated by Geraldine Dunkey ("Dunkey" – Human Resources Director) stating in pertinent part:

- **Azania's Role:** Azania's role has been centralized. While she will continue supporting the PA office with all Risk Claims, she will now report to the corporate office.

29. Plaintiff was also individually emailed on January 27, 2025, by Dunkey stating in pertinent part:

Hi Azania

As discussed in our meeting today, in line with our efforts to centralize roles as the company continues to evolve and integrate acquisitions, you will now report directly to Bozena, effective immediately.

Please note that your compensation, role, and responsibilities will remain unchanged, though you may be assigned risk claims from other locations. However, your title will be updated to **Risk Claims Specialist**, so please ensure that your email signature and any relevant documents are updated to reflect this change.

30.     By March of 2025, Guacho was promoted from an Administrative Assistant to an Accounts Receivable Specialist earning $65,000.00 (illustrating how absurd it was for Plaintiff with tremendous tenure and experience to be paid the same as an entry-level employee).

31.     Plaintiff has and continues to perform near identical responsibilities as two (2) other employees on her team, both of whom are Caucasian: (1) Sydney Howard ("Howard"); and (2) Christina Cenname ("Cenname"). They just handle different insurance lines with slight deviations relative to such insurance lines.

32.     Howard, Cenname, and Plaintiff each handle different insurance processing but perform the same role and responsibilities with respect to each line of insurance. Plaintiff's role and duties would be virtually identical if she performed work on the insurance lines of Cenname or Howard. But they earn 6-figure salaries unlike Plaintiff.

33.     Renee Cobb ("Cobb"), the current Director of Risk and Safety Compliance has confirmed with Plaintiff on several occasions that she, Cenname, and Howard perform the same job positions while suggesting they should have identical titles (as Respondent has not had clear uniformity on titling).

34.     Plaintiff is also far more experienced than Howard and Cenname (and unlike her comparators, Plaintiff is a licensed adjuster).

    (A) Cenname for example performed real estate sales before joining Defendant, and her experience in the industry is with Defendant (where she has been employed for less than 5 years). Moreover, she continues to have a side job performing

6

real estate sales. ***Plaintiff by contrast has more than 15 years of industry experience and has worked for Defendant for roughly 7 years***.

    (B)  Howard for example had less than 5 years of experience handling claims or adjusting before joining Defendant (where she has been employed now for approximately 3 years). ***Plaintiff by contrast has more than 15 years of industry experience and has worked for Defendant for roughly 7 years***.

35.    Despite all of the foregoing, Cenname and Howard (both Caucasian) are paid over $100,000.00 per year (and up to $118,000.00) to perform the same general role as Plaintiff. In fact, they have earned approximately ***twice as much*** as Plaintiff to perform the same job as Plaintiff.

36.    Cenname and Howard both recognized that Plaintiff – who performed the same role as them – was grossly underpaid and not getting pay increases. They shared their views with Plaintiff directly. For example, on March 3, 2026, Cenname emailed Plaintiff stating in pertinent part: "We really need to talk about salary v. job obligations. I suspect you are underpaid. I am not ok with this. Sydney and I spoke and we are about to go to war for you."

37.    By mid-2025, employees were supposed to be considered for raises. <u>Plaintiff was kept at no more than $65,000.00 per year</u>, *but Cenname and Howard were both given pay increases.* This is despite that Plaintiff has performed her job very well, is extremely knowledgeable and skilled, and is more experienced and qualified than both Cenname and Howard.

38.    Upon information and belief, Cenname and Howard receiving raises (and not Plaintiff) was at the direction and behest of Nowak who has perpetuated discriminatory and retaliatory treatment towards Plaintiff.

39.    Nowak has no regard for qualifications, equity or fairness, or racial bias, and for example hired his friend Adam Quirk ("Quirk") to work (in or about March of 2025) as the Director of Safety & Risk Management prior to Cobb fulfilling the role.

40.    Quirk was known internally to be utterly incompetent, unqualified, and lacking in any industry experience. His subordinates including Plaintiff were having to explain fundamentals and basics to Quirk (who was supposed to manage them). After removal for incompetence (regardless of what Defendant may feign as a different reason), Nowak presumably assisted with transitioning Quirk to a different role within Defendant. With Nowak at the helm, there are simply no checks and balances within Defendant, which is why Plaintiff's ongoing racial discrimination and retaliation complaints have been ignored, not properly investigated, and not remedied.

41.    There has been an ongoing pattern of mistreatment of certain black employees within the workplace (with disparate layoffs or terminations, policy enforcement, and pay). Plaintiff will provide numerous examples (of others) as this matter proceeds through litigation and discovery. But suffice it to say when Plaintiff's job title was changed another black employee was subject to a feigned job elimination (culminating in a discrimination case with the EEOC) and a different black woman was required to take on a much more significant role without additional compensation similar to Plaintiff (unlike how Caucasians are treated).

42.    Nowak has facilitated and perpetuated racial discrimination by pushing out black employees and ensuring underpayment(s) to them. Nowak also fails to properly investigate or remedy discrimination complaints internally.

43.    Cobb assumed the role of Quirk in or about January of 2026, at which time Plaintiff and her team had begun reporting to Cobb (the new Director at the time).

44.    Plaintiff obviously has no idea what goes on behind proverbial closed doors, but she has appreciated Cobb: (a) acknowledging her pay is not fair or equal; (b) representing she would advocate to get Plaintiff fairer and proper compensation; and (c) being empathetic towards

what Plaintiff has been through as to her terms and conditions of employment and lack of compensation. But Cobb has not had the authority to effectuate changes for which she advocates.

45.     During calendar year 2026, Plaintiff vehemently asserted within Defendant that she is a victim of racial discrimination in all aspects of her employment - - but primarily as to having been so disparately compensated.

46.     Cobb continued to represent she was pushing for Plaintiff's compensation to be increased through the spring of 2026. For example, Cobb emailed Plaintiff on April 28, 2026:

> I am still pushing on HR now for an increase. Did Chris give you any indication what he was thinking or going to do for you last year?

47.     Plaintiff responded to Cobb on April 29, 2026, via email in pertinent part:

> From my perspective, this is not a standard performance-based review or increase, but rather a correction of compensation disparity that has existed since my transition into this role on the Risk team. This compensation disparity issue raises concerns about unequal treatment. I am the only African American female on the team. I have not been afforded or offered the same opportunities, compensation conversations, or adjustments as my peers, which is discriminatory and constitutes an equitable pay issue and disparate treatment based on my race.

48.     To be blunt, the entirety of Plaintiff's department (manager and colleagues) recognized Plaintiff was (and still is) paid disgustingly low, inequitably, and presumably disparately based upon her race. Instead of Nowak ensuring Plaintiff simply received a fair pay increase, he caused her to be sent on or about May 13, 2026, *an unsolicited "Release Agreement."* The Release Agreement conditioned Plaintiff receiving a lump sum of $7,680.00 upon her waiving all of her discrimination and retaliation claims. The Release Agreement:

(1) Was highly unprofessional and lacking in any reasonable business processes by failing to address Plaintiff's actual work history, ongoing concerns of pay problems, and was offensively low.

(2) Required Plaintiff to "return all company property" insinuating Plaintiff may even face separation, leaving her guessing if Defendant was trying to get rid of her if she executed the agreement.

9

(3) The proposed Release Agreement had numerous typos, was sloppily prepared, gave Plaintiff only 3 days to consider, and failed to address Plaintiff's actual internal workplace complaints in any meaningful manner.

49.     For many years, Plaintiff has performed a job comparable to non-black employees, and she has been paid only a fraction of what non-black similarly situated employees are paid. Plaintiff has not been promoted, she was not given raises, and she was not given equal pay to non-black employees for (racially) discriminatory and retaliatory reasons.[1] There is more than sufficient evidence to support Plaintiff's discrimination and retaliation claims asserted herein.[2]

50.     Plaintiff is permitted to seek damages for <u>no less than</u> a 4-year timeframe from filing this lawsuit for all aspects of her racially disparate compensation (and non-payment of raises).[3] However, because Plaintiff's pay has been racially disparate for so long, she is permitted to seek damages for such racially disparate during the entire duration of her employment.[4]

**Count I**
**<u>Violations of 42 U.S.C. § 1981</u>**
**(Racial Discrimination & Retaliation)**

---

[1] Plaintiff only pursues non-promotion and non-elevation claims herein for a 2-year lookback from the date of this lawsuit filing. She however pursues all other non-payment of compensation, lack of raises, and lack of fair compensation for at least 4 years and for the entire duration of her period of employment.

[2] *See e.g. EEOC v. Williamhouse of Pa., LLC*, 2005 U.S. Dist. LEXIS 52503, at *18 (W.D. Pa. 2005)(lower pay for black employees performing the same or similar job as white employees wherein employer's explanations were either inconsistent or not credible warranted a denial of summary judgment as to § 1981 disparate pay claims)

[3] In *EEOC v. Williamhouse of Pa., LLC*, 2005 U.S. Dist. LEXIS 52503, at *15 (W.D. Pa. 2005), the Court explained §1981 disparate pay claims are subject to ***a 4-year statute of limitations and a 4-year lookback period.***

[4] In *Cardenas v. Massey*, 269 F.3d 251, 257 (3d Cir. 2001), the Third Circuit Court of Appeals reversed a district court and explained "discriminatory wage payments constitute a continuing violation." The Court explained as long as any paycheck premised upon a racial disparity is received within a statute of limitations, the plaintiff may seek recovery on a continuing-violation theory to the beginning of such issuance of such disparate pay (explaining each payroll check is a new discrimination violation). *Id.* at 258; *see also Pahlevani v. Pa. State Univ.*, 2026 U.S. Dist. LEXIS 69998, at *47 (M.D. Pa. 2026)("each paycheck issued pursuant to a discriminatory decision is a discrete and complete discriminatory act for which a claim may be brought").

51.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52.     Plaintiff seeks relief for the following adverse actions:

(1) Non-promotion and non-elevation for a period of two (2) years preceding the filing this lawsuit; and

(2) Non payment of equal wages, raises, bonuses, and other forms of compensation as compared to non-black employees *during the entire duration* of her employment.

53.     The adverse actions taken against Plaintiff as outlined herein because of her race or in retaliation for her concerns of discrimination constitute violations of 42 U.S.C. § 1981. Plaintiff is owed <u>well in excess of</u> $100,000.00 during her tenure, plus punitive damages, emotional distress damages, legal fees, costs, and other available remedies.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A.     Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, raises, and any other forms compensation (including as to lost contributions or benefits in various plans of Defendant);

B.     Plaintiff is to be awarded injunctive or equitable relief mandating proper and non-discriminatory or non-retaliatory compensation prospectively (as well as for past damages);

C.     Plaintiff is to be awarded punitive damages, as permitted by applicable law, at an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

11

D.      Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress / pain and suffering);

E.      Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

F.      Plaintiff is to receive a trial by jury as requested in the caption of this Complaint.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:

Ari R. Karpf, Esq. (91538)
8 Interplex Drive, Suite 210
Feasterville-Trevose, PA 19053
215-639-0801 (P)
215-639-4970 (F)
akarpf@karpf-law.com

Dated: June 3, 2026

12

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| | | |
|---|---|---|
| Azania Muwwakkil | : | CIVIL ACTION |
| v. | : | |
| Pritchard Industries, LLC | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          (  )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.          (  )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.  (  )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          (  )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court. (See reverse side of this form for a detailed explanation of special
    management cases.)          (  )

(f) Standard Management – Cases that do not fall into any one of the other tracks.     (x )

| 6/3/2026 | | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-639-0801 | 215-639-4970 | akarpf@karpf-law.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

10/2024

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### DESIGNATION FORM

Place of Accident, Incident, or Transaction: <u>Defendants place of business</u>

---

***RELATED CASE IF ANY:*** Case Number:_____ Judge:_____

1. Does this case involve property included in an earlier numbered suit?                     Yes ☐

2. Does this case involve a transaction or occurrence which was the subject of an earlier numbered suit?   Yes ☐

3. Does this case involve the validity or infringement of a patent which was the subject of an earlier numbered suit?  Yes ☐

4. Is this case a second or successive habeas corpus petition, social security appeal, or pro se case filed by the same individual?   Yes ☐

5. Is this case related to an earlier numbered suit even though none of the above categories apply? If yes, attach an explanation.   Yes ☐

I certify that, to the best of my knowledge and belief, the within case ☐ **is** / ☒ **is not** related to any pending or previously terminated action in this court.

---

**Civil Litigation Categories**

**A.  *Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts)
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Wage and Hour Class Action/Collective Action
☐ 6. Patent
☐ 7. Copyright/Trademark
☐ 8. Employment
☐ 9. Labor-Management Relations
☒ 10. Civil Rights
☐ 11. Habeas Corpus
☐ 12. Securities Cases
☐ 13. Social Security Review Cases
☐ 14. Qui Tam Cases
☐ 15. Cases Seeking Systemic Relief ***see certification below***
☐ 16. All Other Federal Question Cases. *(Please specify)*:_____

**B.  *Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify)*:_____
☐ 7. Products Liability
☐ 8. All Other Diversity Cases: *(Please specify)*_____
_____

I certify that, to the best of my knowledge and belief, that the remedy sought in this case ☐ **does** / ☒ **does not** have implications beyond the parties before the court and ☐ **does** / ☒ **does not** seek to bar or mandate statewide or nationwide enforcement of a state or federal law including a rule, regulation, policy, or order of the executive branch or a state or federal agency, whether by declaratory judgment and/or any form of injunctive relief.

---

### ARBITRATION CERTIFICATION (CHECK ONLY ONE BOX BELOW)

I certify that, to the best of my knowledge and belief:

☒ Pursuant to Local Civil Rule 53.2(3), this case is not eligible for arbitration either because (1) it seeks relief other than money damages; (2) the money damages sought are in excess of $150,000 exclusive of interest and costs; (3) it is a social security case, includes a prisoner as a party, or alleges a violation of a right secured by the U.S. Constitution, or (4) jurisdiction is based in whole or in part on 28 U.S.C. § 1343.

☐ None of the restrictions in Local Civil Rule 53.2 apply and this case is eligible for arbitration.

NOTE: A trial de novo will be by jury only if there has been compliance with F.R.C.P. 38.

JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MUWWAKKIL, AZANIA

## DEFENDANTS

PRITCHARD INDUSTRIES, LLC

**(b)** County of Residence of First Listed Plaintiff  Montgomery
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant  New York
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ari R. Karpf, Esq.; Karpf, Karpf & Cerutti, P.C., 8 Interplex Drive, Suite 210, Feasterville-Trevose, PA 19053; 215-639-0801; akarpf@karpf-law.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | ☐ 820 Copyrights | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 830 Patent | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 835 Patent – Abbreviated New Drug Application | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 840 Trademark | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 1981 (42USC1981)

Brief description of cause:
Violations of Section 1981.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*     JUDGE _____     DOCKET NUMBER _____

DATE  6/3/2026

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____